**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

BANNER LIFE INSURANCE
COMPANY,

      Plaintiff,

vs.

JUSTIN VERNARD, DESIREE
VERNARD, DESTINY VERNARD,
CHRISTIAN MAY, CASSIDY MAY,
and GABRIELLE VERNARD WADE,

      Defendants.

No. C24-3008-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

_____

## I.    INTRODUCTION

This interpleader action is before me on a pro se motion (Doc. 32) for summary judgment by interpleader defendants Justin Vernard, Desiree Vernard, Destiny Vernard, Cassidy May and Gabrielle Vernard Wade (collectively, the defendants). The motion is unresisted.[1] Oral argument is not necessary. *See* Local Rule 7(c).

## II.    BACKGROUND

This case involves disputed funds from a life insurance policy issued by Banner Life Insurance Company (Banner). The relevant facts are as follows:[2]

---

[1] As explained in further detail in this order, the lack of resistance is due to the fact that Christian May is now deceased and no party has been substituted in his place.

[2] The facts are taken from Banner's complaint (Doc. 1) and motion (Doc. 18) for final judgment in interpleader and its attached exhibits (Docs. 19-1, 19-2). No party has objected to any facts asserted in Banner's filings.

Peggy Sue Godfirnon[3] purchased a life insurance policy (the Policy) from Banner in 2008. Doc. 19-1. Godfirnon's last beneficiary designation before her death identified her children, Justin Vernard, Desiree Vernard, Christian May (Christian), Cassidy May and Gabrielle Vernard Wade, as the Policy's primary beneficiaries, with each entitled to 16.7% of the Policy's proceeds, except Gabrielle Vernard Wade who would get 16.5%. Godfirnon died on June 20, 2020. Banner alleged that Christian has admitted to killing her. The other defendants have been paid a defined portion of the Policy's proceeds, however Christian was not paid. The other defendants are competing claimants to the Policy's proceeds or could potentially have a claim to it.

On June 21, 2020, Christian was charged with First Degree Murder in Godfirnon's death. *State v. May,* Taylor County Case No. FECR005079. On July 18, 2023, he pleaded guilty to charges of Attempt to Commit Murder and Willful Injury Causing Serious Injury. He then died on February 23, 2025.[4] Before his death, Christian was incarcerated at the Iowa Medical and Classification Center in Coralville, Iowa.

According to Banner, Christian admitted to causing Godfirnon's death by stabbing. Iowa law includes a so-called "slayer statute" that would bar the payment of death benefits to Christian if he "intentionally and unjustifiably procure[d] or cause[d]" Godfirnon's death. Iowa Code § 633.535(3). Section 633.535 provides, in relevant part:

> A named beneficiary of a … life insurance policy, or life insurance contract who intentionally and unjustifiably causes or procures the death of the … person upon whose life the policy is issued or whose death generates the benefits under the … contract is not entitled to any benefit under the … policy, or contract, and the benefits become payable as though the person causing death had predeceased the decedent.

---

[3] At the time Godfirnon purchased the Policy, her name was Penny Sue May. She later married Joseph S. Godfirnon and changed her name to Penny Sue Godfirnon.

[4] A press release by the Iowa Department of Corrections states that Christian passed away on February 23, 2025. *Prison Inmate Christian May Dies,* Iowa Department of Corrections, Feb. 25, 2025, https://doc.iowa.gov/press-release/2025-02-25/prison-inmate-christian-may-dies. I take judicial notice of Christian May's death. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) ("The district court may take judicial notice of public records ….")

*Id*. Thus, if the slayer statute applies, the benefits that would have been paid to Christian would be distributed as though he predeceased Godfirnon.

If Christian was not entitled to the Policy's remaining death benefits, the other defendants would have a claim to those benefits. However, Christian maintained that he was entitled to a portion of the Policy's proceeds. As such, Banner was unable to distribute the Policy's remaining death benefits absent a judicial determination as to whether Iowa Code § 633.535(3), or any other statute or legal theory, bars Christian from receiving those benefits. Iowa Code § 633.536 provides "[a] person convicted of murder or voluntary manslaughter of the decedent is conclusively presumed to have intentionally and unjustifiably caused the death for purposes of this section and section 633.535." Iowa Code § 633.536. Christian was not convicted of either murder or voluntary manslaughter, as he pleaded guilty to lesser included offenses. As such, he was not conclusively presumed to be excluded from receiving policy proceeds.

On February 1, 2024, Banner filed a complaint (Doc. 1) for interpleader pursuant to 28 U.S.C. § 1335 and § 2361, naming Justin Vernard, Desiree Vernard, Destiny Vernard, Christian May, Cassidy May and Gabrielle Vernard Wade as defendants, to resolve competing claims for the remaining portion of the Policy.[5] On the same day, 2024, Banner filed its motion (Doc. 2) for interpleader deposit, which I granted on February 2, 2024. Doc. 4. Banner then deposited the subject funds ($43,317.16) into the court's registry.

Each defendant was served with the complaint. All except Christian filed nearly identical answers. *See* Docs. 8-13. Each of the answering defendants affirmed that they may share in the remaining policy proceeds and that the court should rule as to whether

---

[5] Banner interpleaded the subject funds and a court's determination is required on the issue of whether Christian intentionally and unjustifiably caused Godfirnon's death "A determination under section 633.535 may be made by any court of competent jurisdiction by a preponderance of the evidence separate and apart from any criminal proceeding arising from the death." Iowa Code § 633.536.

3

Christian is ineligible to receive any proceeds because he killed Godfirnon. *See* Docs. 8-12. Christian was served with the complaint and his responsive pleading or motion was due May 6, 2024. Doc. 13. He did not respond to the complaint.

On June 28, 2024, I granted Banner's motion (Doc. 18) for final judgment in interpleader and dismissed it from the case with prejudice. Doc. 26. In that order, I directed the defendants to litigate their claims and contentions regarding the Policy's remaining proceeds pursuant to the Trial Management Order. *Id.* at 12. The surviving defendants filed their pro se motion for summary judgment on March 4, 2025. Doc. 32.

### III. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV.  ANALYSIS

The surviving pro se defendants argue that Christian's death means that whether or not he was barred from receiving proceeds from the Policy is no longer an issue. Doc. 32 at 2. Unfortunately, rather than simplifying this case, Christian's death complicates matters further. "In general, entitlement to the proceeds of an insurance policy vest as soon as the beneficiary survives the insured. However, the general rule may be altered by the terms of the insurance contract." *Wittry v. Northwestern Mut. Life Ins. Co.,* 727 F. Supp. 498, 501 (D. Minn. 1989) (internal citation omitted).

The Policy defines a beneficiary as "[t]he person to receive the proceeds payable at the insured's death." Doc. 19-1 at 11. Regarding a beneficiary's death, the Policy states, "the interest of any beneficiary who dies before the insured will pass to any surviving beneficiaries according to their respective interests." *Id.* at 14. These two clauses do not alter the general rule for the Policy that "entitlement to the proceeds of an insurance policy vest as soon as the beneficiary survives the insured." *Wittry,* 727 F. Supp. at 501.

As such, when these two clauses are read in conjunction with the general rule described in *Wittry,* if Christian was entitled to any proceeds from the Policy, then his right to receive those proceeds vested the moment he survived Peggy Sue Godfirnon. Christian's subsequent death did not cause that right – if it existed – to evaporate. Instead, like any other asset, that right passed to the beneficiaries under Christian's will (if he had one), or to his heirs under the intestate succession provisions of the Iowa Probate Code. *See* Iowa Code §§ 633.350; 633.210-226. Thus, the dispositive issue remains whether Christian was precluded from receiving proceeds from the Policy under Iowa's slayer statute. If not, then each of his heirs or beneficiaries has a claim to those proceeds and must be substituted for Christian as a party in interest in this case.

Federal Rule of Civil Procedure 25 governs substitution of parties after the death of a party. Rule 25(a)(1) provides:

6

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1). However, the onus to substitute does not fall squarely on the shoulders of the decedent's successors. *American Republic Insurance Company v. Ryan,* No. 12-CV-00478, 2013 WL 12155636, at *1 (W.D. Mo. Feb. 1, 2013). As the *Ryan* court explains:

> Federal Rule 25(a)(3) requires that "[a] statement noting death must be served" on nonparties as provided in Rule 4. In other words, "the suggesting party must serve other parties and nonparty successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute." *See Villa v. Heller,* 2012 WL 5932627, at * 2 (S.D. Cal. Nov. 27, 2012) (emphasis supplied); *Community House, Inc. v. City of Boise,* 2012 WL 3686001, at * 2 (D. Idaho Aug. 24, 2012) ("[I]t appears that [the decedent's] successors or representatives have not been served, and therefore the 90-day period within which a substitution motion may be made or dismissal will be entered has not been triggered yet.").

*Ryan,* 2013 WL 12155636, at *1; *see also* Fed. R. Civ. P. 25(a)(3). As such, the defendants must give notice of Christian's death, and of this action, to any heir or beneficiary of Christian's so his heirs or beneficiaries may decide whether to file a motion to substitute.[6]

Because Christian's death does not change the fact that the dispositive issue in this case remains the application of Iowa's slayer statue, I must deny the defendants' motion for summary judgment. The record before me contains no evidence from which I may determine, as a matter of law, that Christian intentionally and unjustifiably caused Godfirnon's death. Iowa Code § 633.535(3). Rather, the record simply contains the

---

[6] Because of the interfamilial nature of this case, it is possible that Christian's heirs or beneficiaries are already parties to this case, especially if he did not have children. However, those facts are not presently in the record.

allegations set forth in Banner's interpleader complaint, from which I can conclude only that Iowa's slayer statute is an issue in this case.

## V. CONCLUSION

For the foregoing reasons set forth above:

1. The defendants' motion (Doc. 32) for summary judgment is **denied** without prejudice.

2. The scheduling order (Doc. 23) and the trial management order (Doc. 24) are both **vacated** and the bench trial of this case, currently scheduled for October 6, 2025, is **continued**. A new scheduling order and trial management order will issue after all issues regarding the substitution of the party in interest have been resolved.

3. The surviving defendants are directed to act diligently to identify the heirs or beneficiaries of Christian May, if any. If such heirs or beneficiaries are identified, and any of them are not already parties to this case, then the surviving defendants must provide them with notice of Christian May's death, and of this action, pursuant to Federal Rules of Civil Procedure 4 and 25. The surviving defendants must file with the court proof of any such notice no later than **45 days** of the date of this order.

4. By contrast, if the surviving defendants determine that Christian May has no heirs or beneficiaries, or that all such heirs or beneficiaries are already parties to this case, they must file an affidavit setting forth that information. Such affidavit must be filed within **45 days** of the date of this order.

**IT IS SO ORDERED** this 22nd day of May, 2025.

_____
Leonard T. Strand
United States District Judge